# Federal Defenders
## OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

March 18, 2020

Re: <u>United States v. Robert Smith, 15 CR 448 (BMC)</u>

Your Honor:

    I represent Robert Smith, who is scheduled to be sentenced on April 1, 2020, for violating the conditions of his supervised release. I write to request that he be sentenced to time served – which will equal three months on April 1 – with a new term of supervised release including a period of home incarceration with electronic monitoring. In light of the severe health risks accompanying incarceration due to the coronavirus pandemic, an alternative to traditional incarceration is clearly appropriate where, as here, the violation is non-violent. If the Court even potentially agrees, we also request the sentence date be advanced if possible.

    Mr. Smith's present incarceration is more a product of immaturity than criminality. In late 2017, he was issued a summons in connection with four violations of supervised release, three of which were among the less serious the Court encounters. One concerned marijuana use. Another concerned moving to his mother's home without permission. And a third concerned his failure to maintain employment but the violation report made clear he had made some efforts at working. None of these violations were likely to land him in custody under most circumstances. There was another charge of assault involving a more serious domestic violation allegation, but the complainant in that case had recanted and, as evidenced by his plea to the other charges here, it seemed clear the government may have had problems of proof as to that charge.

    Instead of facing up to this challenging but manageable situation, Mr. Smith simply sought to avoid it. He was afraid of being arrested in Court, even though the Court's decision to issue a summons instead of a warrant would suggest such a fear was unjustified, and did not appear. A warrant for his arrest was then issued and he stopped reporting altogether. He was not arrested for two years until he was a passenger in a car subject to a traffic stop. Obviously, his case for remaining at liberty at that point was significantly weaker.

    Notably, there is no supplemental charge for new criminal conduct during the time he had absconded. Moreover he appears to have maintained employment. In January counsel contacted the store where he told the Probation Department he had obtained employment and the manager

confirmed he had continued to work there part time, albeit off the books. Based on the annexed letters from both his children, their mother and his present girlfriend, he has remained close with his family. Had he faced up to rather than sought to avoid a difficult situation there is a good chance he would not have served any time in connection with this violation.

He has been punished for this conduct. At this point, the defendant has served almost three months in jail. His mother has indicated he can live at her home even if it involves strict home incarceration. Given the coronavirus pandemic, home incarceration is vastly preferable to jail from a health and safety perspective. Inmates cycle in and out of BOP pretrial facilities from all over the world and the country, and people who work in the facilities leave and return daily. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings.""Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS. Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases. *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY. In China, officials have confirmed the coronavirus spread at a rapid pace in prisons. Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT

This was a trial case and the Court may well remember Mr. Smith's sentencing. His family had attended the entire trial, and he indicated at sentence that their presence had driven home to him the reality that his actions impact the people he loves. His violation of supervised release, and in particular his absconding from supervision which aggravated the situation, is doubtless disappointing to the Court particularly in light of his moving words. Nonetheless, the defendant's words were not empty. There is nothing in the violation report indicating a return to a criminal lifestyle. He appears to have maintained some employment. And his relationship with his family plainly remains as strong as ever based upon their authentic words in the annexed letters.

Under the totality of the circumstances, including a national emergency, roughly three months in jail, coupled with a new term of supervised release and a period of home incarceration, is sufficient punishment for these violations.

                                                      Very Truly Yours,
                                                          /s/
                                                    Michael Weil, Esq.
                                                    (718) 407-7413

cc: AUSA Devon Lash
    Probation Officer Michelle Powell