

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

WK:DEL
F. #2020R00013

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 20, 2020

By Email and ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Robert Smith
     Criminal Docket No. 15-448 (BMC)

Dear Judge Cogan:

  The government submits this letter in advance of the sentencing of the defendant Robert Smith for his violation of supervised release, which is currently scheduled for April 1, 2020.[1] For the reasons set forth below, both the government and the U.S. Probation Office ("Probation") respectfully request that the Court impose a sentence within the applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range, which is 5 to 11 months. When Probation filed charges against the defendant for violating the conditions of his supervised release in 2017, the defendant breached the Court's trust by absconding and remaining a fugitive for two years. A sentence within the Guidelines range is warranted because of that breach of trust and the defendant's refusal to accept responsibility for his actions.

 I. <u>Background</u>

  On March 9, 2016, the defendant pleaded guilty to possession with intent to distribute cocaine base, in violation of Title 21, United States Code, Section 841(a)(1), a class C felony. See Violation of Supervised Release Report (the "Violation Report") dated December 11, 2017, at 3. On July 8, 2017, the defendant was sentenced to 21 months in

---

[1] The government takes no position on the defendant's request to advance the sentencing date.

custody, three years of supervised release and a $100 special assessment.  Id.  His term of supervision commenced on March 22, 2017.  Id. at 1.

II.	Violations of Supervised Release

The Violation Report details the defendant's violations between March and December 2017.  The Violation Report contains four charges: (1) new criminal conduct (assault); (2) illegal use of a controlled substance (marijuana); (3) failure to maintain employment; and (4) failure to notify probation about a change in residence.

On December 12, 2017, the Court issued a summons for the defendant to appear for arraignment on the four charges.  ECF No. 65.  The defendant failed to do so.  On January 29, 2018, the Court issued an arrest warrant.  For two years thereafter, the defendant failed to appear and evaded apprehension.  In early January 2020, he was detained in a traffic stop by the New York City Police Department for questioning in connection with a state criminal investigation.  On January 6, 2020, the defendant was transferred into federal custody on the basis of the Court's 2018 arrest warrant.  The defendant has been in custody since then.

On February 12, 2020, the defendant pleaded guilty to Charges Two and Four, in satisfaction of all charges,[2] and admitted on the record he used marijuana and failed to notify his probation officer about his change of residence.

The defendant seeks a sentence of time served and a new term of supervised release, which would include home incarceration, in light of his underlying conduct and the COVID-19 pandemic.  ECF No. 74.  He also asks the Court to advance his April 1, 2020 sentencing date.  Id.

III.	Discussion

A.	Sentencing on a Violation of Supervised Release

A district court has "broad discretion" in imposing sentencing, and in the context of a violation of supervised release proceeding the Court can revoke supervised release and order a term of imprisonment followed by additional supervision.  See United States v. Wirth, 250 F.3d 165, 169 (2d Cir. 2001).

As the Second Circuit has explained, "'the primary goal of a revocation sentence' ought to be 'to sanction the violator for failing to abide by the conditions of the court-ordered supervision,' in order to account for the breach of trust inherent in failing to appreciate the privileges associated with such supervision."  United States v. Sindima, 488 F.3d 81, 86 (2d Cir. 2007) (quoting U.S.S.G. chap. 7, pt. A.3(b)); accord United States v. Gonzalez, 634 F. App'x 15, 18 (2d Cir. 2015).  "Thus, 'at revocation the court should

---

[2] The government will move to dismiss Charges One and Three at sentencing.

2

sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.'" Sindima, 488 F.3d at 86 (quoting U.S.S.G. chap. 7, pt. A.3(b)).

Here, pursuant to Title 18, United States Code, Section 3583(e)(2), the Court may sentence the defendant to up to two years' incarceration. The applicable Guidelines range based on the defendant's violation conduct (a Grade C violation) and criminal history category (III) is 5 to 11 months' imprisonment. See U.S.S.G. § 7B1.4(a).

B. Argument for Guidelines Sentence

The government respectfully submits that a sentence within the Guidelines range of 5 to 11 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals of sentencing for the defendant's violation of supervised release. The government acknowledges that the charges to which the defendant pleaded guilty are Grade C violations and do not constitute new criminal conduct. However, by disregarding the conditions of his supervised release and evading the Court's order to appear for nearly two years, the defendant has shown he does not respect the authority of this Court and has no intention of conforming to the release conditions.

Courts have imposed above-Guidelines sentences in similar cases when defendants have absconded from supervised release. For instance, in United States v. Brockington, 765 F. App'x 518, 521 (2d Cir. 2019), the Second Circuit upheld a district court's above-Guidelines sentence after the defendant absconded for eight months and ultimately pleaded guilty to charges that he used marijuana, failed to notify the probation office of a change in his address, and committed two state offenses. The district court observed that the applicable Guidelines range was 5 to 11 months' imprisonment, but determined that an above-Guidelines sentence was appropriate because of the defendant's "breach of trust and failure to accept responsibility for the violations." Brockington, 765 F. App'x at 520. The defendant here faces similar charges and avoided the Court's jurisdiction for two years—three times as long as the defendant in Brockington.

Similarly in United States v. Allen, 662 F. App'x 80 (2d Cir. 2016), the district court imposed an above-Guidelines sentence on a defendant who absconded for two years and was apprehended after the commission of a new federal crime. The district court noted the defendant "seriously violated the trust of the Court, and violated every opportunity that the Court and probation gave [him] to do better for [him]self." Allen, 662 F. App'x at 82 (upholding the district court's sentence). Like in Allen, the defendant indicated at his sentencing that he would change his behavior. But a mere six months later, when charged with violations of supervised release, the defendant chose to disobey the Court's orders and the law. Such behavior indicates a continuing disregard of the consequences of violating the law.

In light of the defendant's serious breach of trust, his disregard of the Court's authority, and examples of the seriousness with which courts have treated similar conduct in

cases such as Brockington and Allah, the government respectfully submits that its request for a Guidelines sentence is both reasonable and measured.

### C. COVID-19 Is Not Sufficient Reason to Impose a Sentence of Time Served

The current situation should not cause the Court to deviate from a Guidelines sentence. The defendant largely sidesteps the issues of his conduct by claiming that COVID-19 provides sufficient grounds to grant his release. Additionally, the defendant has offered no evidence that he is uniquely situated with respect to the risks of COVID-19 or that the Queens Detention Facility ("QDF"), where he is currently incarcerated, is not appropriately handling the situation.

In fact, the government's research shows that there have been no confirmed cases of COVID-19 in the QDF or Bureau of Prison ("BOP") facilities.[3] The government has been informed by QDF's warden that the QDF has additionally implemented measures to mitigate any spread of COVID-19 within its facility, much like those undertaken at BOP facilities. See, e.g., Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp.

These measures, which have been implemented at the QDF, include the following:

- Suspension of all social visits: Social visits have been suspended, with case-by-case accommodations for attorney visits. All attorneys entering the QDF are being screened for travel risk factors and physical symptoms.

- Screening and testing of inmates: All newly-arriving inmates are screened for COVID-19 exposure risk factors and symptoms and the QDF is not accepting inmates with exposure risk factors.

- Modified Operations: Group gatherings are being limited.

In addition, the defendant does not have any health issues that would place him at special risk. Staff at the QDF reported to the government that the defendant has not requested medical care since his incarceration on January 6, 2020.

---

[3] QDF's warden informed the government of the absence of any confirmed cases on Friday, March 20, 2020. The status of COVID-19 cases at BOP facilities is updated here: https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_status.

In light of the serious nature of the defendant's violation and for all the reasons set forth above, both the government and Probation respectfully request that the Court impose a sentence within the Guidelines range.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:   /s/ Devon Lash
Devon Lash
Assistant U.S. Attorney
(718) 254-6014

cc:    Mike Weil, Esq. (by ECF and Email)
      U.S. Probation Officer Michelle Powell (by E-mail)
      Clerk of the Court (BMC) (by ECF)