# Federal Defenders
## OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and
Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

The Honorable Brian M. Cogan  March 21, 2020
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>United States v. Robert Smith, 15 CR 448 (BMC)</u>

Your Honor:

  I write in reply to the government's sentencing memorandum. The government's position that the Court at sentence should take no account of an unprecedented public health crisis that has impacted virtually every aspect of life in this country is simply not reasonable.

  The fact that there had not been a confirmed case of COVID-19 at the Queens Detention Facility ("QDF") as of March 20, 2020, relied upon by the government, provides no indication as to what next week or next month will bring, given that all public health authorities anticipate a rapid escalation of cases. In an opinion filed yesterday in a case concerning the blackout at the Metropolitan Detention Center last winter, a panel of the Second Circuit noted at the end:

> As we write this opinion, a different and even more dramatic challenge is presented by COVID-19, a novel and easily transmitted viral disease that has prompted a rapid reorientation of workplace practices and social life in support of public health. The impact of this recent emergency on jail and prison inmates, their counsel (in the lead, the Federal Defenders), the United States Attorneys, and the BOP, including the individual Wardens and the personnel of each facility, is just beginning to be felt. Its likely course we cannot foresee. Present information strongly suggests, however, that it may be grave and enduring .

*Federal Defenders v. Quay*, 19-1778 (2d Cir., March 20, 2020) at 27. (Ex. A.) The government simply "cannot foresee" how long the QDF will remain virus free – assuming it is now. *Id*. How would a widespread infection be handled if area hospitals are already overwhelmed? What other safety concerns might arise if a significant number of staff members stay home to care for themselves or their families? All of this is unknown. That Mr. Smith is healthy does not mean he is protected from serious illness, or that, if infected, he would not spread the virus to others in jail or upon release.

  Yesterday, the New York City Bar Association issued a statement calling on all actors in the criminal justice system, including those in the federal system, to take immediate steps to "swiftly move to reduce the density at all New York area jails and prisons." A top doctor at

Rikers Island warned that "a storm" of infection is coming to that facility absent steps to reduce the population. *See Statement of the New York City Bar Association Urging Immediate Steps to Reduce Prison and Jail Populations To Prevent the Spread of the COVID-19 Virus*. (Ex. B.) There is simply no reason to believe QDF, a contract facility housing immigration detainees as well as federal prisoners, does not face this same "storm."

In the last few days, several local prosecuting authorities have taken steps to reduce jail populations to the extent practicable and consistent with public safety. *See, e.g.*, Tim Prudente & Phillip Jackson, *Baltimore State's Attorney Mosby to Stop Prosecuting Drug Possession, Prostitution, and Other Crimes Amid Coronavirus*, Baltimore Sun (Mar. 18, 2020), https://www.baltimoresun.com/coronavirus/bs-md-ci-cr-mosby-prisoner-release-20200318-u7knneb6o5gqvnqmtpejftavia-story.html (Baltimore State's Attorney ordered staff to "dismiss pending criminal charges against anyone arrested for possessing drugs including heroin, attempted distribution of any drug, prostitution, trespassing, minor traffic offenses, open container and urinating in public"); Erica Orden, *Brooklyn Will Stop Prosecuting "Low-Level Offenses that Don't Jeopardize Public Safety,"* CNN (Mar. 17, 2020), https://www.cnn.com/world/live-news/coronavirus-outbreak-03-17-20-intlhnk/ h_0254c4f54c1c52e79ce419e22ca35e6b (Brooklyn DA will stop prosecuting low-level offenses and is also asking public defenders to inform office of vulnerable clients detained pretrial whom the DA "should consider releasing during this crisis"); Max Marin & Rya Briggs, *Philly Police to Halt Narcotic Arrests, Other Charges During COVID Outbreak*, WHYY.org (Mar. 17, 2020), https://whyy.org/articles/philly-police-to-haltnarcotics arrests-other-charges-during-covid-outbreak/ (Philadelphia Police Commissioner instructed department to delay arrests for low-level criminal offenses, including all narcotics activity).

Any concern that the defendant is receiving a windfall due to this crisis is simply outweighed by public health and safety concerns, where again, nothing about the violations suggest Mr. Smith presents any immediate threat to anyone. The concern is also easily mitigated. Home confinement is a form of punishment. To the extent it is less punitive than traditional incarceration the Court can simply impose more of it.

Because (1) the defendant's Guidelines are relatively low and his violations are not violent; (2) he has already served a significant portion of a Guidelines term; and (3) an unprecedented public health crisis makes reducing jail populations imperative, the direction in 18 U.S.C. 3553(a)(2) that the Court consider the need to "protect the public" militates in favor of sentencing the defendant to time served, and a new term of supervised release with a period of home confinement at his mother's house where she lives with Mr. Smith's sister and her two children.

                                                 Very Truly Yours,
                                                       /s/
                                                Michael Weil, Esq.
                                                (718) 407-7413

cc: AUSA Devon Lash
    Probation Officer Michelle Powell